**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| JORDAN ARONSON, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>vs.<br><br>WHITESTONE HOME FURNISHINGS, LLC d/b/a SAATVA,<br><br>*Defendant*. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

## I. INTRODUCTION

1. This is a putative class action under Washington law brought to address deceptive and unlawful emails that plague consumers' inboxes. The Washington legislature, concerned with deception in emails, enacted the Washington Commercial Electronic Mail Act ("CEMA"), RCW 19.190, which, among other things, prohibits any person from sending a commercial email with a false or misleading subject line. RCW 19.190.020.

2. Defendant Whitestone Home Furnishings, LLC d/b/a Saatva ("Defendant" or "Saatva") sells, markets, and manufactures made to order mattresses, furniture, and bedding accessories (the



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

"Products"). The Products are exclusively sold by Defendant directly to consumers, predominantly through its website www.saatva.com.

3. Defendant markets its Products by email to Washington residents. The subject lines in these emails often promote "sales" and "discounts" on the Products. However, many subject lines are false, misleading, and unlawful because they promote misleading discounts, under false time restrictions, and/or from misleading regular and former prices.

4. Getting an advertised bargain is important to consumers. Consumers are more likely to purchase an item if it is advertised as a good deal.

5. Further, if a sale is advertised as ending soon, consumers are even more likely to buy now, rather than wait, comparison shop, and/or buy something else.

6. There is nothing wrong with a legitimate sale. But a fictitious sale—that is, one with made-up regular/former prices or made-up expirations—is deceptive and illegal. Moreover, advertising false and misleading discounts in the subject line of a promotional email violates CEMA and the Washington Consumer Protection Act ("CPA"). *Brown v. Old Navy LLC*, 567 P.3d 38 (Wash. 2025).

7. Defendant's sales were not legitimate because the products are regularly available on the website at a discount from a higher price (called the "Reference Price"). So, the purported discounts were false and misleading because discounts are regularly available. Additionally, Defendant promoted these misleading discounts by sending emails with false and misleading subject lines.

8. Defendant also sent emails with misleading subject lines regarding "sales" that would supposedly end on a specific day when in truth the sales were extended or not limited to the extent represented.

9. For example, Defendant's emails contained subject lines such as "$200 to $600 Off | Labor Day Sale." These subject lines lead reasonable consumers to believe that there is a substantial sale in effect and Defendant's regular and former prices are normally much higher. In truth, Defendant's Products were almost always available for purchase at a discount. So, the regular price is actually a discounted price, and the amount of the advertised discount is misleading and illusory.



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

10. As another example, Defendant's emails often contained subject lines describing sales as "Today Only" or "Ends Tonight." These subject lines lead reasonable consumers to believe that if they don't buy before the sale ends, they won't be able to get the advertised discount. In truth, the sales did not end at the advertised time—the same sale was extended or replaced by another sale. So, the deals did not genuinely expire as advertised.

11. Plaintiff is a Washington resident who received Defendant's deceptive email advertisements. Plaintiff brings this case to protect Washington residents from Defendant's false and misleading emails about its purported limited-time discounts.

## II. PARTIES

12. Plaintiff Jordan Aronson is domiciled in King County, Washington and has been a citizen and resident of Washington during at least the preceding three years.

13. The proposed class includes citizens of Washington.

14. Defendant Whitestone Home Furnishings, LLC limited liability company and is headquartered in New York. Defendant owns the Saatva brand.

## III. JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1332(d). The amount in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, there are more than one hundred putative Class Members, and minimal diversity exists because the putative Class Members are citizens of a different state than Defendant.

16. This Court has personal jurisdiction over Defendant under RCW 4.28.185. Defendant transacts business in Washington. The claims giving rise to this action arise from Defendant's transaction of business in this state and also Defendant's purposeful transmission of electronic mail messages to Washington residents. This Court also has personal jurisdiction over Defendant under RCW 19.86.160 because Defendant engaged in conduct in violation of the CPA that had an impact in Washington. Finally, Plaintiff purchased Products from Defendant's website while in Washington, and those Products were delivered to her address in Washington, and Plaintiff received emails from Saatva while in Washington.


EMERY | REDDY, PC
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

17. Venue is proper in this District under 28 U.S.C. §§ 1391(b)(2) and (c)(2). A substantial part of the events giving rise to the claims emanated from activities within this District. Moreover, Defendant can be deemed to reside in this District because it is subject to personal jurisdiction in this Court with respect to this civil action. At all relevant times, Defendant transacted business in this District, including by selling products to customers living in this county and by sending electronic mail messages to residents of this county.

## IV. FACTUAL ALLEGATIONS

### A. **Defendant's False and Misleading Emails Regarding Discounts.**

18. Defendant distributes, markets, and sells made to order mattresses, furniture, and bedding accessories directly to consumers.[1] The Products are sold through the website www.saatva.com.

19. Defendant's emails created the false impression that the Products' regular and former prices as charged on the website are higher than they truly are, the discounts are limited in time, and the discounts are genuine.

20. Defendant advertised these discounts extensively through emails to recipients on their mailing list who previously made purchases from www.saatva.com. Additionally, this information is contained in the subject lines of emails. For example, Defendant sent an email on April 13, 2023, with the subject line "Up to 20% Off Disappears Tonight."

21. When Defendant advertises the discounts through emails with subject lines such as "Up to 20% Off" or "Up to $600 Off," reasonable consumers interpret the advertisements to mean that recipients will get a discount off of the former and regular prices charged by Defendant on the website in the recent past and for a substantial time. In other words, reasonable recipients believe that they will receive up to "__% off" or "$__ off" the former and regular prices charged on the website in the recent past, and those higher prices represent the amount that consumers formerly and consistently had to pay for Defendant's goods before the sale began and represent the prices that consumers will have to pay in the future for Defendant's goods when the sale ends. This creates a sense of value and urgency:

[1] *See* https://www.saatva.com/about-us (last visited November 4, 2025).


EMERY | REDDY, PC
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

buy now, and you will receive something worth more than you pay for; or wait, and you will pay more for the same thing later.

22. Defendant also sent emails with subject lines stating that purported sales were set to expire soon or on a specific date. But when one sale ended, it was either extended or another comparable sale began, and the Products' prices did not immediately revert to the supposed pre-sale Reference Prices. The cycle continues repeatedly.

23. Indeed, during the Class Period, all or nearly all mattresses on Saatva.com are consistently advertised as discounted from a higher Reference Price. To confirm the Products are always or nearly always on "sale," Plaintiff's counsel randomly selected and reviewed 35 screenshots of the Saatva.com homepage, archived by the Internet Archive's Wayback Machine, covering the January 2022 to December 2023 period. On 100% of these days, the website prominently advertised a time-limited discount that applied sitewide (or virtually sitewide). In other words, all or nearly all Products were consistently available at a discount from a fictitious regular and former price, rendering any advertised limited time "sale" false and misleading.

24. Defendant sent numerous commercial emails to Class Members containing the following subject lines on the following dates. The emails below are examples and are not exhaustive.

| E-Mail Subject | Date |
|---|---|
| **It's not a game. Last day to save with March Mattress Madness.** | 3/23/2023 |
| **It's not a game. Last day to save with March Mattress Madness** | 3/27/2023 |
| **Last Day for Black Friday in March** | 3/31/2023 |
| **Our Spring Sale Ends Tonight** | 4/3/2023 |
| **Early Access Sale Ends Tonight** | 4/6/2023 |
| **Ends Tonight: Our Biggest Easter Sale Ever** | 4/10/2023 |
| **Up to 20% off disappears tonight.** | 4/13/2023 |
| **Tax Refund Sale – Last Day** | 4/20/2023 |
| **Tax Refund Weekend – Last Day** | 4/24/2023 |
| **Last Day for Spring Super Sale Early Access** | 4/27/2023 |
| **It's the last day of our 4-Day Spring Super Sale** | 5/1/2023 |
| **Weekend Flash Sale** | 5/8/2023 |
| **MEMORIAL DAY EARLY BIRD SALE** | 5/11/2023 |
| **BEST MEMORIAL DAY DEAL—GUARANTEED!** | 5/15/2023 |



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

| E-Mail Subject | Date |
|---|---|
| MEMORIAL DAY SALE \| $225 - $600 off | 5/16/2023 |
| BEAT THE MEMORIAL DAY RUSH! BUY TODAY! | 5/22/2023 |
| LAST DAY FOR OUR BEST MEMORIAL DAY DEAL | 5/25/2023 |
| Memorial Day Sale Continues | 6/1/2023 |
| LAST CALL: Up to $600 off | 6/5/2023 |
| It's your last day to save twice | 6/12/2023 |
| Last day to maximize July 4th savings! | 6/22/2023 |
| Beat The Rush! July 4th Best Deal Extended! | 6/29/2023 |
| JULY 4TH SALE EXTENDED | 7/6/2023 |
| Hurry for 15% off orders over $1,000 | 7/10/2023 |
| Last chance at Prime time Savings. | 7/13/2023 |
| Our Biggest Summer Savings Event | 7/24/2023 |
| Mattress Madness ends tonight! | 7/27/2023 |
| Last day for our Big Bedroom Bonanza Sale | 8/3/2023 |
| 15% OFF Limited-Time Sale | 8/14/2023 |
| Labor Day Early Bird Sale | 8/17/2023 |
| $200 to $600 Off \| Labor Day Sale | 8/24/2023 |
| Labor Day Rush is Coming… | 8/28/2023 |
| It's not too late to save up to $600! | 9/7/2023 |
| Last call for Labor Day savings | 9/11/2023 |
| *Extended* End of Summer Savings Event | 9/18/2023 |
| Even Shorter Limited-Time Sale on Award-Winning Mattresses | 9/21/2023 |
| OktoberRest Pre-Sale - Last Day! | 9/28/2023 |
| Last day for Early Access savings. | 10/5/2023 |
| Last day of our Biggest Celebrating America Sale | 10/9/2023 |
| Hurry! Prime Time 2-Day Event is almost over | 10/11/2023 |
| Prime Time Event NOW EXTENDED | 10/12/2023 |
| Our Biggest 3-Day Mattress Extravaganza Ever | 10/19/2023 |
| Boo! Last chance to save big with our Halloween [Sale] | 10/23/2023 |
| Last day for Halloween guaranteed savings | 10/26/2023 |
| Beat the rush for huge Halloween savings | 10/30/2023 |
| Monstrous Halloween savings end tonight | 10/31/2023 |
| Extended Monstrous Halloween Sale | 11/2/2023 |
| Last Day for Election Day savings | 11/9/2023 |
| Early Bird Black Friday Mattress Deal | 11/20/2023 |
| OUR BIGGEST BLACK FRIDAY SALE EVER! | 11/24/2023 |
| BLACK FRIDAY PRICING EXTENDED! | 11/25/2023 |
| Beat the Cyber Monday rush. Get our best price now! | 11/26/2023 |
| IT'S NOT TOO LATE. CYBER MONDAY SALE–EXTENDED! | 11/30/2023 |



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

| E-Mail Subject | Date |
|---|---|
| **LAST CALL FOR CYBER MONDAY DEALS!** | 12/4/2023 |
| **Last Day for Big Holiday Savings** | 12/7/2023 |
| **Our Biggest Holiday Sale ends tonight** | 12/14/2023 |
| **Last Day of Our Biggest Holiday Sale** | 12/21/2023 |
| **'Tis the Season to Save up to $600** | 12/25/2023 |
| **EARLY ACCESS SALE** | 12/28/2023 |
| **Last Day for End-of-Year Savings** | 1/1/2024 |
| **Last Day for Extended End-of-Year Savings** | 1/4/2024 |
| **4-Day Winter Sale - Last Day!** | 1/8/2024 |
| **MLK Day Sale - Early Access** | 1/11/2024 |
| **MLK Day Sale!** | 1/15/2024 |
| **MLK Sale Extended—Last Day!** | 1/18/2024 |
| **Last Day of Weekend Flash Sale** | 1/22/2024 |
| **Last Day to Sleep Better and Save More** | 1/25/2024 |
| **Mattress Madness LAST DAY** | 1/29/2024 |
| **Groundhog Day Early Access - LAST DAY!** | 2/1/2024 |
| **Biggest Groundhog Day Sale Ever - LAST DAY!** | 2/2/2024 |
| **Extended: Presidents' Day Early Access Sale** | 2/8/2024 |
| **OUR BEST PRESIDENTS' DAY SALE GUARANTEED** | 2/12/2024 |
| **BEAT THE RUSH to Our Best Presidents' Day Sale!** | 2/15/2024 |
| **It's our biggest President's Day Sale Ever** | 2/19/2024 |
| **LAST DAY for President's Day Extended Sale!** | 2/22/2024 |
| **Hurry! It's your Last Chance for Presidents' Day Deals** | 2/26/2024 |
| **Only 1 Day Left! Shop our Leap Year Sale** | 2/29/2024 |
| **Beat the Clock Before the Price Increase** | 3/4/2024 |
| **St. Patricks Day Early Bird Savings - LAST DAY!** | 3/7/2024 |
| **Biggest St. Patrick's Day Sale - Guaranteed!** | 3/11/2024 |

25. Reasonable recipients of these emails would believe that Defendant was offering a limited time sale. They would believe that, if they purchase during the sale, they will receive a genuine discount off the regular and former prices of the Products which Defendant consistently charged in the recent past. Moreover, they would believe that the sale would end at the stated time, and if they wait beyond that time, then the sale will be over, and the Products' prices would immediately return to and stay at their regular prices.


**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

26. Also, as shown above, many emails contain false subject lines representing that sales were limited in time and about to end, but in truth, Defendant always planned to "extend" the same sale.

27. Many emails also contain false subject lines representing that sales were "Limited Time" but in truth Defendant repeatedly offers such sales.

28. For example, on April 13, 2023, Defendant sent an email with the subject line "Up to 20% off disappears tonight." But that subject line was false and misleading. On April 14, 2023, Defendant instituted a new sale described as "15% off orders $1k+ Ends 4/17."[2] On April 19, 2023, Defendant instituted yet another sale described as "Get up to $600 off Ends 4/20." On April 21, 2023, Defendant reinstated the "15% off orders $1k+" sale—now described as "Ends 4/24." And on April 25, 2023, Defendant reinstated the "Save up to 20% off" sale which now supposedly "Ends 4/27." This pattern of cycling sitewide or nearly sitewide sales—i.e., instituting a new "sale" upon expiration of another—continues time and again, rendering the email subject lines false and misleading.

29. On October 26, 2023, Defendant sent an email with the subject line "Last day for Halloween guaranteed savings." On October 31, 2023, five days after the purported end of "Halloween guaranteed savings," Defendant sent an email with the subject line "Monstrous Halloween Savings end tonight." Despite the statement that the "Monstrous Halloween Savings" would end the night of October 31, 2023, the sale was extended on November 2, 2023, wherein the email subject line stated "Extended Monstrous Halloween Sale" for the "15% off any order over $1,000" sale.

30. On November 26, 2023, Defendant sent an email with the subject line "Beat the Cyber Monday rush Get our best price now!" Then on November 30, 2023, Defendant sent an email with the subject line "IT'S NOT TOO LATE. CYBER MONDAY SALE-EXTENDED!" These emails were followed by one that had the subject line "LAST CALL FOR CYBER MONDAY DEALS!" which Defendant sent on December 4, 2023.

31. These are just a few examples from a very narrow time frame.

---

[2] During the Class Period, all or nearly all of Defendant's mattresses intended for adults cost over $1,000.



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

**B. <u>Defendant's Emails to Plaintiff and Class Members Violate CEMA and the CPA.</u>**

32. Washington's CEMA regulates deceptive email marketing. CEMA prohibits the sending of a commercial email that "[c]ontains false or misleading information in the subject line." RCW 19.190.020.

33. Violating this provision of CEMA also violates the CPA. RCW 19.190.030.

34. Advertising fake discounts in the subject line of a promotional email, with fake time pressure, violates CEMA and, accordingly, the CPA. *Brown v. Old Navy LLC*, 567 P.3d 38 (Wash. 2025).

35. Defendant's email advertisements contain subject lines that misstate the duration of the purported sales and/or misstate the discount that recipients would purportedly receive for purchasing during the sale. As a result, these promotional emails contain false or misleading information in the subject line, in violation of CEMA and the CPA.

36. Defendant sends these emails for the purpose of promoting the Products for sale and to drive sales to the website.

37. Defendant's email subject lines stating the supposed duration of its sales are false and misleading because, as discussed above, sales either (1) are regularly available, or (2) did not expire at the advertised time.

38. Defendant's email subject lines stating that recipients will receive significant savings if the recipients purchase during the sale are false and misleading because, as discussed above, consumers do not truly receive the advertised discounts. Instead, because substantial discounts are commonly available, the purported discount is actually much smaller (or there is no discount at all).

39. By misrepresenting the duration of its purported sales in email subject lines, Defendant creates a false sense of urgency. Recipients who read the email subject lines believe that if they act now, they can purchase a higher value item at a limited-time discount; but if they wait, then the discount will expire and if they want to purchase a Product, they will have to pay the former or regular price.


EMERY | REDDY, PC
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

40. Defendant designs the subject lines of the promotional emails to induce recipients to make a purchase during the supposedly limited-time sales. Defendant's email subject lines often contain words spurring recipients to make purchases immediately before time runs out. But because the Products are regularly on sale, each of these email subject lines that state that the sale is ending soon are false and misleading.

41. Defendant is constantly sending commercial emails to recipients on its website's mailing list, typically multiple times a week. Plaintiff and Class Members received such emails from Defendant, many of which include false or misleading subject lines regarding fake discounts with fake time limitations. On information and belief, Defendant sent at least tens of thousands of emails to Washington recipients with similar false or misleading subject lines.

42. Defendant knows, or has reason to know, its emails containing false and misleading subject lines are sent to Washington residents. Defendant knows where recipients of its emails reside for at least the following reasons.

a. For consumers who made a purchase on Defendant's website, such as Plaintiff, Defendant has physical addresses associated with the recipient's name, email address, and order.

b. Defendant has access to granular location information tied to email addresses from commercial data brokers like Oracle, Equifax, and Lexis. Defendant can purchase consumer data from these brokers which connects individuals to email addresses, state of residence, and physical location.

c. Defendant may obtain information that some recipients of marketing emails are Washington residents because that information is available, upon request, from the registrant of the Internet domain names contained in the recipients' email addresses. *See* RCW 19.190.020(2).

d. Defendant had reason to know the marketing emails were sent to Washington residents based on the extremely high volume of outbound marketing emails which are continuously sent to everyone on its mailing list.


**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

43. Defendant also knows what sales it is offering and knows that, in truth, the sales are not truly ending.

44. Defendant's commercial emails containing false and misleading information about fake sales clog up inboxes with spam email, waste limited data space, and violate Plaintiff's and putative Class Members' statutory right to be free from deceptive commercial emails.

**C. <u>Defendant's Deceptive Emails Violate Federal Law.</u>**

45. The Federal Trade Commission Act ("FTCA") prohibits "unfair or deceptive acts or practices in or affecting commerce[.]" 15 U.S.C. § 45(a)(1). Under FTC regulations, discounting schemes like that employed in Defendant's email subject lines are deceptive practices that violate the FTCA.

46. Pursuant to 16 C.F.R. § 233.1, entitled Former Price Comparisons:

> (a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the *former price* is the actual, bona fide price at which the article was offered to the public on a *regular basis* for a *reasonably substantial period of time*, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an *artificial, inflated price* was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.
>
> (b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a *reasonably substantial period of time*, in the *recent*, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.
>
> (c) The following is an example of a price comparison based on a fictitious former price. John Doe is a retailer of Brand X fountain pens, which cost him $5 each. His usual markup is 50 percent over cost; that is, his regular retail price is $7.50. In order subsequently to offer an unusual "bargain," Doe begins offering Brand X at $10 per pen. He realizes that he will be able to sell no, or very few, pens at this inflated price. But he doesn't care, for he maintains that price for only a few days. Then he "cuts" the price to its usual level—$7.50—and advertises: "Terrific Bargain: X Pens, Were $10, Now Only $7.50!" *This is obviously a false claim*. The advertised "bargain" is not genuine.



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

> (d) Other illustrations of fictitious price comparisons could be given. An advertiser might use a price at which he *never offered the article at all*; he might feature a price which was *not used in the regular course of business*, or which was *not used in the recent past* but at some *remote period in the past*, without making disclosure of that fact; he might use a price that was not openly offered to the public, or that was *not maintained for a reasonable length of time*, but was immediately reduced.
>
> (e) If the former price is set forth in the advertisement, *whether accompanied or not* by descriptive terminology such as "Regularly," "Usually," "Formerly," etc., the advertiser should make certain that the former price is not a fictitious one. If the former price, or the amount or percentage of reduction, is not stated in the advertisement, as when the ad merely states, "Sale," the advertiser must take care that the amount of reduction is not so insignificant as to be meaningless. *It should be sufficiently large that the consumer, if he knew what it was, would believe that a genuine bargain or saving was being offered. An advertiser who claims that an item has been "Reduced to $9.99," when the former price was $10, is misleading the consumer, who will understand the claim to mean that a much greater, and not merely nominal, reduction was being offered.*

47. FTC regulations also prohibit false and misleading claims regarding the duration and expiration of sales, like those employed in the subject lines of Defendant's emails. Indeed, retailers "should not offer an advance sale under circumstances where they do not in good faith expect to increase the price at a later date, or make a 'limited' offer which, in fact, is not limited." 16 C.F.R. § 233.5.

**D. <u>Research Confirms That Time-Limited Discounts Influence Consumer Behavior and Perceptions of Value.</u>**

48. Studies and articles support the effectiveness of Defendant's deceptive email scheme.

49. "By creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product."[3] Thus, "empirical studies indicate that, as discount size increases, consumers' perceptions of value and their willingness to buy the product increase, while their intention to search for a lower price decreases."[4]

---

[3] Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. Pub. Pol'y & Mktg. 52, 55 (Spring 1992).

[4] *Id.* at 56.



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

50. "[R]eference prices are important cues consumers use when making the decision concerning how much they are willing to pay for the product."[5] This study also concluded that "consumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price."[6]

51. A study regarding the effect of the time-limited advertisement "10 Hours Only Super Sale" concluded that "[t]he willingness to buy was significantly higher" and "the attitude towards the deal was more favorable."[7]

52. An article explains that, in a test case, the addition of countdown timers increased conversion rates "from ~3.5% to ~10%."[8]

53. Another article explains: "We compared the performance to previous 'big sale' campaigns featuring a similar single-minded design, but without the countdown timer. The uplift was impressive showing . . . 400% higher conversion rate" with countdown timer.[9]

54. Accordingly, research confirms that deceptive discount advertising is intended to, and does, influence consumer behavior by artificially inflating consumer perceptions of an item's value and causing consumers to spend money they otherwise would not have, purchase items they otherwise would not have, and/or purchase products from a specific retailer.

**E. <u>Plaintiff Jordan Aronson</u>**

55. Plaintiff Jordan Aronson purchased a mattress and mattress protector from www.saatva.com on March 13, 2023. In making this purchase, she provided Defendant with her Washington physical address and email address.

---

[5] Jerry B. Gotlieb & Cyndy Thomas Fitzgerald, An Investigation Into the Effects of Advertised Reference Prices On the Price Consumers Are Willing To Pay For the Product, 6 J. of App'd Bus. Res. 1 (1990).

[6] *Id.*

[7] *See* Aggarwal, P., *Use it or lose it: Purchase acceleration effects of time-limited promotions*, Journal of Consumer Behaviour (Sept. 17, 2002) at 399-401.

[8] *See* CXL, *How Creating a Sense of Urgency Increased Sales by 332%* (Feb. 28, 2023), at pp. 10-18, available at https://cxl.com/blog/creating-urgency (last visited November 3, 2025).

[9] *See* Upland Software, *Dynamic email content leads to 400% increase in conversions for Black Friday email*, available at https://uplandsoftware.com/adestra/resources/case-study/dynamic-email-content-leads-to-400-increase-in-conversions-for-black-friday-email/ (last visited November 3, 2025).


EMERY | REDDY, PC
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

56. Plaintiff Aronson recalls purchasing only those two items from Saatva and has been receiving countless marketing emails from Defendant since at least March 23, 2023. In fact, the amount of marketing emails she received from Defendant was so great that Plaintiff was forced to unsubscribe from receiving any further emails from Defendant on or around March of 2024.

57. Thus, since at least March 13, 2023, Defendant knew that Plaintiff Aronson was a resident of Washington and that any emails sent to Plaintiff Aronson would be sent to a Washington resident.

58. Plaintiff Aronson received each of the emails from Defendant identified in paragraph 24, above.

59. The emails in paragraph 24 are only representative examples. Plaintiff Aronson received additional substantially similar emails from Defendant.

60. Plaintiff Aronson received Defendant's emails while she was physically present in Washington.

61. Prior to Plaintiff Aronson unsubscribing from Defendant's emails, she would have liked to receive truthful information from Defendant regarding its Products. However, due to Defendant's conduct, Plaintiff cannot be certain which emails from Defendant contain truthful information and which emails are spam with false and misleading information in subject lines designed to spur consumers into making a purchase. Thus, without a court order requiring Defendant to only send honest emails about sales, Plaintiff cannot discern which emails are not false or misleading.

**F. <u>No Adequate Remedy at Law.</u>**

62. Plaintiff seeks an injunction. Plaintiff is permitted to seek an injunction because she has no adequate remedy at law. Legal remedies here are not adequate because they would not stop Defendant from continuing to transmit emails with false or misleading subject lines to Washington residents.

## V. CLASS ACTION ALLEGATIONS

63. Plaintiff brings the asserted claims on behalf of the following proposed class (the "Class") and subclasses:


**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

> All Washington residents who, during the Class Period and while present in Washington, received promotional emails from Saatva with subject lines either (i) advertising "% off" or "$ off" discounts; (ii) stating a "sale" was in effect; (iii) stating a sale, discount, or price would end at a specified time but the same sale, discount, or price was extended upon expiration; or (iv) stating a sale, discount, or price is time limited, ending, or tethered to a holiday or event, when Saatva continued to offer or reinstated the same or comparable sale, discount, or price for a longer time.

64. Plaintiff reserves the right to propose additional subclasses based on specific subcategories of emails and Class Members at class certification.

65. The Class Period is the time period beginning on the date established by the Court's determination of any applicable statute of limitations and ending on the date a class certification order is entered in this action. Thus, the statute of limitations begins no later than the date four years before this Complaint is filed.

66. The following people are excluded from the proposed Class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; and (3) Plaintiff's counsel and Defendant's counsel.

***Numerosity***

67. The proposed Class contains members so numerous that separate joinder of each member of the class is impractical. There are at least tens of thousands of Class Members in Washington.

68. Class Members can be identified through Defendant's electronic mailing lists, internal records, and public notice.

***Predominance of Common Questions***

69. There are questions of law and fact common to the proposed Class. Common questions of law and fact include, without limitation:

a. whether Defendant's email subject lines regarding purported discounts are false or misleading;

b. whether Defendant's email subject lines violate CEMA;


**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

c. whether Defendant's email subject lines violate the CPA; and

d. the greater of actual damages or statutory damages due to the Plaintiff and the proposed Class.

***Typicality & Adequacy***

70. Like members of the proposed Class, Plaintiff received emails from Defendant that contained false or misleading subject lines regarding discounts.

71. There are no conflicts of interest between Plaintiff and the Class.

***Superiority***

72. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## VI. CLAIMS

**Count 1: Violations of Washington's Commercial Electronic Mail Act**
**(By Plaintiff and the Class)**

73. Plaintiff incorporates paragraphs 1-61 above.

74. Plaintiff brings this cause of action individually and on behalf of members of the Class.

75. Defendant is a "person" under CEMA. RCW 19.190.010(11).

76. As alleged more fully above, Defendant violated CEMA by initiating the transmission of commercial electronic mail messages that contained false or misleading information in the subject line to Plaintiff's and Class Members' electronic mail addresses.

77. Defendant sent these emails to Plaintiff and Class Members for the purpose of promoting the Products for sale.

78. Defendant knew or had reason to know that it transmitted such emails to email addresses held by Washington residents, including Plaintiff's.

79. Defendant's acts and omissions violated RCW 19.190.020(1)(b).

80. Defendant's acts and omissions injured the Plaintiff and Class Members.



EMERY | REDDY, PC
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

81. The balance of equities favors the entry of permanent injunctive relief against Defendant. Plaintiff, the members of the Class, and the general public will be irreparably harmed absent the entry of permanent injunctive relief. Defendant's unlawful behavior is ongoing as of the date of the filing of this pleading, so without the entry of a permanent injunction, Defendant's unlawful behavior will not cease and, in the unlikely event that it voluntarily ceases, is likely to reoccur.

82. Plaintiff and Class Members are therefore entitled to injunctive relief in the form of an order enjoining further violations of RCW 19.190.020(1)(b).

**Count 2: Violations of the Washington Consumer Protection Act via Misleading Emails**
**(By Plaintiff and the Class)**

83. Plaintiff incorporates paragraphs 1-61 above.

84. Plaintiff brings this cause of action individually and on behalf of members of the Class.

85. Plaintiff and Class Members are "persons" within the meaning of the CPA. RCW 19.86.010(1).

86. As alleged above, Defendant violated CEMA by initiating the transmission of commercial electronic mail messages to Plaintiff and Class Members that contained false or misleading information in the subject line.

87. A violation of CEMA is a per se violation of the CPA. RCW 19.190.030(1).

88. A violation of CEMA establishes all elements of the CPA as a matter of law.

89. As alleged more fully above, Defendant's transmission of commercial electronic messages to Plaintiff and Class Members that contained false or misleading information in the subject line also violates the CPA because it constitutes unfair or deceptive practices that occur in trade or commerce.

***Unfair Acts or Practices***

90. As alleged in detail above, Defendant committed "unfair" acts by falsely stating in email subject lines that it was offering a discount off the regular prices of its Products, and that the discount was only available for a limited time, when none of this was true (or at minimum was highly misleading).


**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

91. The harm to Plaintiff and the Class greatly outweighs the public utility of Defendant's conduct. There is no public utility to misrepresenting whether the Products are discounted and misrepresenting the duration of sales. Plaintiff and the Class's injury was not outweighed by any countervailing benefits to consumers or competition. Misleading consumers only injures healthy competition and harms consumers.

***Deceptive Acts or Practices***

92. As alleged in detail above, Defendant's representations in email subject lines that the Products were on sale, that the sale was limited in time, and that customers were receiving substantial discounts, are deceptive.

93. Defendant's representations were likely to deceive, and did deceive, Plaintiff and other reasonable recipients. Defendant knew, through the exercise of reasonable care, that these statements were inaccurate and misleading.

94. Defendant's unfair or deceptive acts or practices vitally affect the public interest and thus impact public interest for purposes of applying the CPA. RCW 19.190.030(3); RCW 19.190.100.

95. Defendant's acts and omissions caused injury to Plaintiff and Class Members. Violations of CEMA establish the injury and causation elements of a CPA claim as a matter of law. *See Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1002–04 (W.D. Wash. 2019) ("by alleging a CEMA violation of RCW 19.190.020, a plaintiff alleges all five elements of a CPA violation . . . .Of particular relevance, a plaintiff alleging a CEMA violation under RCW 19.190.030(1) need not allege injury or causation beyond the CEMA violation. . . .Moreover, the Washington Supreme Court recently held that CEMA's liquidated damages provision, RCW 19.190.040, establishes the injury and causation elements of a CPA claim as a matter of law.").

96. Under the CPA, "[p]rivate rights of action may … be maintained for recovery of actual damages, costs, and a reasonable attorney's fee. A private plaintiff may be eligible for treble damages," and "may obtain injunctive relief, even if the injunction would not directly affect the individual's own rights." Washington Pattern Jury Instruction Civil No. 310.00 (Consumer Protection Act—Introduction) (internal citations omitted); RCW § 19.86.090.



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

97. Under the CPA, Plaintiff and Class Members are entitled to seek, and do seek, the greater of actual damages and statutory damages of $500 per email that violates CEMA. In addition, Plaintiff and Class Members seek treble damages, which are permitted under the CPA, including for CEMA violations. Plaintiff seeks treble damages to further Plaintiff's and Class Members' financial rehabilitation, encourage citizens to bring CPA actions, deter Defendant and other persons from committing CEMA violations, and punish Defendant for false and misleading advertising practices.

98. Plaintiff and Class Members are also entitled to, and seek, injunctive relief prohibiting further violations of the CPA.

## VII. JURY DEMAND

99. Plaintiff demands the right to a jury trial on all claims so triable.

## VIII. PRAYER FOR RELIEF

100. Plaintiff seeks the following relief for herself and the proposed Class:

A. An order certifying the asserted claims, or issues raised, as a class action;

B. A judgment in favor of Plaintiff and the proposed Class;

C. The greater of actual or statutory damages, treble damages, and punitive damages where applicable;

D. Pre- and post-judgment interest;

E. An injunction prohibiting Defendant's deceptive conduct, as allowed by law;

F. Reasonable attorneys' fees and costs, as allowed by law;

G. Any additional relief that the Court deems reasonable and just.

Dated: November 5, 2025

Respectfully submitted,

By: */s/ M. Anderson Berry*
M. Anderson Berry, WSBA No. 63160

By: */s/ Timothy W. Emery*
Timothy Emery, WSBA No. 34078

By: */s/ Brook Garberding*
Brook Garberding, WSBA No. 37140



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

Gregory Haroutunian*
Brandon P. Jack*
**EMERY REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: 916.823.6955
*anderson@emeryreddy.com*
*emeryt@emeryreddy.com*
*brook@emeryreddy.com*
*gregory@emeryreddy.com*
*brandon@emeryreddy.com*

Alexander E. Wolf*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
280 South Beverly Drive, PH
Beverly Hills, CA 90212
Tel: 872-365-7060
*awolf@milberg.com*

William J. Edelman*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Tel: 771-474-1121
*wedelman@milberg.com*

*Counsel for Plaintiff*

**Pro Hac Vice* applications forthcoming